IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GREENVILLE IMAGING, LLC                                                                                      PLAINTIFF

vs.                                                                                                        No. 4:05CV137-D-D

WASHINGTON HOSPITAL CORPORATION
d/b/a THE KING'S DAUGHTERS HOSPITAL                                                          DEFENDANT

OPINION

On June 10, 2005, the Plaintiff instituted this action, asserting a claim for breach of contract in connection with a contractual dispute between it and the Defendant. The court has jurisdiction of this cause pursuant to 28 U.S.C. § 1332. A bench trial in this matter was convened from March 5, 2007, through March 7, 2007, in Greenville, Mississippi.

Having carefully considered the testimony and exhibits presented at trial along with the parties' post-trial submissions, the court finds as follows: (1) the Defendant breached the parties' contractual agreement; (2) the Plaintiff has failed to sufficiently establish that it suffered any compensable damages beyond its attorneys' fees and its litigation expenses; and (3) attorneys' fees and litigation expenses shall be awarded to the Plaintiff.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court issues the following findings of fact and conclusions of law.

*A. Factual Background*

On July 24, 2004, Imaging Resources (a former party to this litigation which assigned its rights to the current sole Plaintiff, Greenville Imaging, LLC; hereinafter, both of these entities will be denoted as "Imaging") and the Defendant Washington Hospital Corporation (WHC, a Greenville, Mississippi hospital corporation operating under the name King's Daughters Hospital) entered into

a written contract (entitled "MRI Service Agreement") whereby Imaging agreed to provide a mobile MRI[1] system to WHC on a fee per-use basis for a 24-month period. This contract was subsequently extended to a 48-month term, commencing on August 31, 2004.

On February 7, 2005, however, WHC and Delta Regional Medical Center (DRMC), another Greenville hospital, entered into an Asset Purchase Agreement whereby DRMC agreed to purchase almost all of the assets of WHC; this sale closed on March 31, 2005. As a part of this agreement, DRMC assumed some, but not all, of WHC's contractual obligations. One of the contracts not assumed was WHC's MRI Service Agreement with Imaging; this non-assumption took place despite WHC's and Imaging's Agreement containing a clause that WHC would "require" any purchaser of its assets to assume the Agreement.

This litigation followed, with Imaging filing its complaint on June 10, 2005, and asserting a claim for breach of contract.

*B. Discussion*

1. Breach of Contract

The MRI Service Agreement between WHC and Imaging contained the following provision in section 7.7 of the Agreement, entitled "Successors & Assigns:"

> Client [WHC] shall require any successor, (whether direct or indirect, including, but not limited to stock asset sale, merger, reorganization, consolidation or liquidation, etc.) to expressly assume and agree to perform client's duties and responsibilities pursuant to this agreement and shall provide confirmation of such assumption in a form satisfactory to [Imaging].

The Plaintiff asserts that WHC breached this section of the Agreement by failing to require

---

[1] An MRI is a Magnetic Resonance Imaging machine, which is a non-invasive method used by medical providers to render images of the inside of a medical patient's body.

DRMC to assume the MRI Service Agreement between WHC and Imaging. The Defendant argues that its actions were excused by another section of the Agreement (7.10) and that the operative section of the Agreement (7.7) is unenforceable as against public policy.

Under Mississippi law,[2] courts follow a three-tiered approach for interpreting contracts. Martin v. Fly Timber Co., Inc., 825 So. 2d 691, 696 (Miss. Ct. App. 2002). First, the court looks to the language that the parties used in expressing their agreement. Pfisterer v. Noble, 320 So. 2d 383, 384 (Miss. 1975). The contract is interpreted as written if the contractual language is clear and unambiguous. Frierson v. Delta Outdoor Co., 794 So. 2d 220, 224 (Miss. 2001). Unambiguous contractual language is given its plain meaning and the court does not look beyond the four corners of the contract in such a case. Frierson, 794 So. 2d at 224. If the contact's language is ambiguous, then in that event the court interprets the language most strongly in favor of the non-drafting party, and may consider parol evidence in discerning the intent of the parties. Theobald v. Nosser, 752 So. 2d 1036, 1041 (Miss. 1999).

Here, the court finds that the language contained in section 7.7 of the Agreement is unambiguous and clear. The section clearly imposes a duty on WHC to require any successor to assume and agree to perform WHC's duties under the subject Agreement. The court further finds that, under that plain language in section 7.7, WHC breached the agreement when it failed to require DRMC to assume the MRI Service Agreement between WHC and Imaging. As noted below, the Defendant's arguments to the contrary are without merit.

Section 7.10 of the parties' Agreement affords no relief to the Defendant. It provides that

---

[2]The parties' Agreement provides, in section 7.5, that Mississippi law shall be used to interpret and enforce its terms.

"[n]either party will be deemed in breach if its failure to perform under this Agreement is caused by conditions beyond its reasonable control (for example, fire, natural disaster, labor strikes, and so on.)." Here, however, WHC's failure to perform under the Agreement and require DRMC to assume WHC's obligations was not caused by conditions beyond WHC's reasonable control. Instead, it appears from the testimony presented at trial that WHC, while perhaps making some minimal effort to have DRMC assume the MRI Agreement, conceded the point in the face of DRMC's opposition and proceeded with the sale and transfer of assets. In order to more easily effectuate the sale, WHC ultimately permitted DRMC to reject eleven of 194 contracts into which WHC had entered and which it presented to DRMC. It appears to the court that WHC simply made a business decision to go forward with the sale and not require DRMC to assume the subject Agreement, thus placing WHC in breach of the Agreement's plain and unambiguous terms.

Likewise, WHC's arguments that section 7.7 of the Agreement is void as against public policy is without merit. WHC asserts that section 7.7 constitutes an improper restraint on its ability to divest itself of its assets. While it is true that under Mississippi law, a restriction on the sale of property can be deemed unreasonable when the restriction causes a sufficient chilling effect on a party's ability to sell the subject property, the restriction in section 7.7 falls far short of having any such chilling effect. Pitts v. Foster, 743 So. 2d 1066, 1070 (Miss. Ct. App. 1999). Considering (as will be noted *infra*) that the Agreement was a needs-based only contract, with no minimum number of monthly scans specified or required, requiring DRMC or any other prospective purchaser to assume the Agreement did not constitute a chilling effect on WHC's ability to sell its assets. Thus, the court finds that this argument is without merit.

In sum, the court finds that the Defendant WHC breached section 7.7 of the parties'

Agreement when it failed to require DRMC to assume the MRI Service Agreement between WHC and Imaging.

2. Damages

Now that the court has determined that the Defendant WHC breached the parties' Agreement, the next question for the court to consider is damages. The Plaintiff admits that the MRI Agreement did not provide for a minimum guarantee of the number of MRI scans to be performed under the Agreement; the court has reviewed the Agreement and reaches the same conclusion: even if DRMC had assumed the subject Agreement, the Agreement did not provide for minimum number of MRI scans to be performed, or indeed for any to be performed at all. In light of the testimony presented at trial, the court finds that there is insufficient evidence to conclude that DRMC would have availed itself of the Plaintiff's services even if DRMC had assumed WHC's obligations under the Agreement. Thus, the court finds that the Plaintiff cannot establish that it has suffered any compensable damages as a result of the Defendant's breach of the Agreement.

In determining the amount of damages in a breach of contract case under Mississippi law, the court bases its determination on the injured party's expectation interest. See Theobald, 752 So. 2d at 1042 (holding that court must endeavor to place non-breaching party in same position party could reasonably expect to be in had breach not occurred.). So, in the case *sub judice*, the court must place the non-breaching party, the Plaintiff Imaging, in the same position it would have occupied if DRMC had assumed the MRI Service Agreement between Imaging and the Defendant WHC.

At the outset, and critical to the court's analysis, is the parties' assent that the MRI Service Agreement was a needs-based contract for MRI services with no minimum requirement as to the number of scans that must be performed. Thus, the crucial inquiry is whether DRMC, even if it had

assumed the Agreement, would have made use of the Plaintiff's services. In order to answer this inquiry, it is necessary to determine whether DRMC was experiencing a volume of scans greater in number than it could provide with its in-house MRI equipment. Given the testimony presented at trial, the court finds that DRMC has not experienced MRI scan volume greater than its own machines can provide, and thus would not have made use of the Plaintiff's services, thereby rendering the Plaintiff unable to establish that it has suffered any compensable damages as a result of the breach.

David Wallace, DRMC's current Director of Radiology, testified at trial that DRMC has an average of four open slots per day in its MRI schedule (out of a total of fifteen slots), which simply makes use of its in-house MRI equipment. The Plaintiff presented no competing testimony whatsoever that leads the court to conclude that DRMC would have made use of the Plaintiff's equipment at all even if DRMC had assumed the subject Agreement, or to what extent the equipment would have been used and the number of scans that would have been and would be performed. While the Plaintiff presented extensive testimony and evidence concerning its determination that the Greenville community lags behind other communities in the numbers of MRI scans performed per 1,000 population and that DRMC in the past has reduced the quality of MRI images in order to accommodate a heavy daily schedule of patients, the court finds that this evidence is not relevant to the issue of damages. This evidence is not relevant because, even if the subject Agreement had been assumed, it is DRMC's past and ongoing needs that are the sole factor that is determinative of the number (if any) of necessary Plaintiff-provided MRI scans, and the Defendant presented testimony from DRMC that it would not have (and presently does not and will not in the future) have had any need for the Plaintiff to provide any MRI scans on behalf of DRMC's patients. Certainly, no

evidence of the need for any Plaintiff-provided scans was presented with the requisite degree of specificity that would provide the court with a basis for calculating damages based on anything other than sheer speculation; indeed, the testimony at trial was to the effect that all necessary scans since the sale of KDH to DRMC have been performed on DRMC's in-house equipment. In the court's opinion, it would be inappropriate for the court to engage in guesswork and conjecture when the terms of the contract, which do not provide for a minimum number of scans to be performed, are readily discernible. Thus, in order for the court to avoid abject speculation as to an amount of necessary scans and to award any compensatory damages in this case, the court would be required to reform the parties' Agreement to provide for a minimum number of scans to be performed by the Plaintiff; under well-established law, however, the court is not at liberty to reform the parties' Agreement absent factors not present in this case. Townsend v. Townsend, 859 So. 2d 370, 376 (Miss. 2003).

In sum, the court finds that while the Defendant WHC breached the parties' Agreement, the Plaintiff did not establish that it has suffered any compensable damages to which the court may provide relief.

### 3. Attorneys' Fees

The parties' Agreement does, however, have a provision providing for the award of attorneys' fees to a non-defaulting party. Section 8.3 of the Agreement provides that "the defaulting party shall pay the other parties [*sic*] reasonable attorney's fees together with an amount equal to all expenses paid or incurred in the enforcement of any right or privileges hereunder."

Under the plain language of this provision, and in light of the court's determination that WHC breached the parties' Agreement, the court finds that this section of the Agreement requires

WHC to pay the Plaintiff Imaging's attorneys' fees and expenses that it incurred in pursuing this litigation. Because the total amount of fees and expenses has not been provided to the court, a specific award cannot be made at this juncture. The Plaintiff shall provide the court with an affidavit outlining its incurred attorneys' fees and expenses. The court will subsequently issue an order awarding reasonable fees and expenses after the Defendant has been provided an opportunity to dispute any fees and expenses it asserts are unreasonable.

*C. Conclusion*

In sum, the court finds that the Defendant Washington Hospital Corporation breached section 7.7 of the MRI Service Agreement between it and the Plaintiff Greenville Imaging, LLC. While the Plaintiff did not establish that it has suffered any compensable damages as a result of the breach, the court finds that the Plaintiff is entitled to an award of attorneys' fees and expenses under section 8.3 of the Agreement, and those fees and expenses shall be computed and awarded after an affidavit outlining the fees and expenses has been submitted to the court and the Defendant has been afforded an opportunity to respond in opposition if it so chooses.

A separate judgment in accordance with this opinion shall issue this day.

This the 27th day of April 2007.

/s/ Glen H. Davidson
Chief Judge